UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION AT PIKEVILLE**

BRENDA K. COLEMAN )
                               )
    Plaintiff, ) Action No. 7:16-CV-000143-JMH
                               )
v. )
                               ) **MEMORANDUM OPINION AND ORDER**
NANCY A. BERRYHILL, )
Acting Commissioner of )
Social Security )
                               )
    Defendant. )

                         \*\* \*\* \*\* \*\* \*\*

This matter is before the Court on the parties' cross-Motions for Summary Judgment (DE 7, 9) on Plaintiff's appeal of the Commissioner's denial of his application for disability insurance benefits.[1] The matter having been fully briefed by the parties is now ripe for this Court's review.

**I.**

In determining whether an individual is disabled, an Administrative Law Judge ("ALJ") uses a five step analysis:

1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520(1982)).

## II.

Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging disability (Tr. 217-21) beginning in June 2012. The applications were denied initially and on reconsideration (Tr. 91-94), and by an Administrative Law Judge after a hearing ("ALJ") (Tr. 12-28, 29-56). The Appeals Council declined Plaintiff's request for review (Tr. 1-3), making the ALJ's March 2, 2015 decision the final agency decision for purposes of judicial review. 20 C.F.R. §

422.210(a). This appeal followed and the case is ripe for review pursuant to 42 U.S.C. § 405(g).

Plaintiff was born on May 31, 1966, and was forty-six (46) years of age at the time of the alleged onset of disability (TR 22, 35). She has a tenth grade education and never obtained her GED (TR 35). She last worked as an associate at Bila's Gas & Go gas station where she did a number of tasks, including stocking and inventory orders and had previous experience as an assistant manager and a cashier at retail establishment and as a certified nursing assistance in a nursing facility (TR 35-37).

In late June 2012, Plaintiff was treated at the Williamson Memorial Hospital emergency room for complaints of back pain resulting from a work-related injury. She complained of constant sharp and shooting low back pain radiating down her left hip and thigh (Tr. 425-434). A contemporaneous x-ray of Plaintiff's lumbar spine revealed mild disc space loss at L5-S1 with no fracture or subluxation (Tr. 435). The following day, Plaintiff was seen by physician, Ramanathan Padmanaban, M.D. (Tr. 452-453). Dr. Padmanaban performed a physical examination that indicated Plaintiff was experiencing decreased lumbar range of motion. An MRI scan revealed transitional fifth lumbar vertebra and mild degenerative central and posterior disc herniation with early degenerative change at L4-L5 (Tr. 454). Dr. Padmanaban diagnosed Plaintiff with a lumbar sprain and lumbosacral sprain; prescribed

pain medication; and ordered physical therapy (Tr. 452-453). Subsequently, Plaintiff received physical therapy until September 2012, when it was noted that she did not return for additional physical therapy (Tr. 464-473, 474, 476), and in late September 2012, Dr. Padmanaban released her back to work (Tr. 437-438).

Plaintiff did not seek treatment for her back again for approximately six months, until March 2013 at Shelby Valley Clinic (Tr. 614-618). At that time, she complained of aching and dull low back pain radiating down her left leg; trouble walking; muscle spasm; and numbness and tingling in her left lower extremity (Tr. 614). Physician's Assistant, Pamela Newsome, under the supervision of Suzanne Ford, D.O., conducted a physical examination of Plaintiff that revealed restricted range of motion in the cervical and lumbar spine; with 4/4 strength in her quadriceps, hamstring, left bicep, and left triceps; 5/5 in all others; no acute distress; and intact sensation (Tr. 616-617). Plaintiff was diagnosed with lumbago, neck pain, incontinence without sensory awareness, benign hypertension and a tobacco use disorder (smoking one pack per day). An MRI of her cervical spine was ordered and she was referred to specialists (Tr. 617). The record does not disclose any further treatment for Plaintiff's alleged back or neck conditions.

Plaintiff sought psychological treatment at Mountain Comprehensive Care Center (MCCC) in early October 2012 (Tr. 580). Clinical Social Worker, Neta Maynard, conducted an examination of

4

Plaintiff and noted that she exhibited a slumped posture but normal body movements; a depressed, sad, and anxious mood with congruent affect; normal thought content; poor concentration; and impaired memory, insight, and judgment. Plaintiff was diagnosed with a major depressive disorder with psychotic features and a posttraumatic stress disorder (Tr. 587-588). During the period Plaintiff received care at MCCC, she reported sadness; irritability; anxiousness; poor sleep and appetite; obsessive thoughts; trouble concentrating; social isolation; feelings of uselessness and worthlessness; decreased interest in things; lack of energy; fatigue; crying spells, and visual hallucinations (Tr. 581-613). Plaintiff also complained of flashbacks and nightmares of being robbed at gunpoint when she previously worked at a gas station (Tr. 584).

In January 2013, Plaintiff reported a stable mood, fair sleep, no hallucinations, and only mild anxiety at her January 2013 appointment at MCCC (Tr. 657-658). The following month, Plaintiff reported feeling better and getting out more (Tr. 653-654). At her last appointment at MCCC, in July 2013, Plaintiff exhibited normal eye contact and speech; no impaired cognition; a depressed and anxious mood with congruent affect; and no perceptual disturbances (Tr. 627-629). Plaintiff was prescribed medication and received psychotherapy until July 2013 with progress notes reflecting improvement in symptoms (Tr. 580-613, 627-664). The record does

5

not disclose any further treatment for Plaintiff's alleged mental impairments.

In June 2013, Plaintiff was examined by consultative psychiatrist, David Atcher, M.D (Tr. 621-624). Dr. Atcher noted that Plaintiff exhibited a distant and somewhat confused facial expression; poor eye contact; tense psychomotor activity; poor concentration; normal gait; slow speech rate; no evidence of tangential process; depressed mood; blunted affect; detached and preoccupied attitude; with intact immediate, recent, and long-term memory (Tr. 623). Dr. Atcher diagnosed Plaintiff with a depressive disorder with psychotic features, and opined that Plaintiff could not reliably carry through with simple tasks and directions due to a very short attention span and poor memory; could not reliably carry through with complex tasks and directions also due to a very short attention span and poor memory; and would not respond well to the usual pressures of the work environment due to paranoia and hallucinations (Tr. 623-624).

In September 2013, the state agency physician, Rebecca Luking, D.O., opined that Plaintiff could perform light exertion work and could occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently stoop, kneel, crouch, and crawl; but she must avoid even moderate exposure to vibration (Tr. 123-126). Also in September 2013, state agency psychologist, Ilze Sillers Ph.D., opined that Plaintiff would be able to understand

6

and remember simple instructions, but may have more difficulties with more detailed instructions; would be able to complete simple tasks work procedures and make work decisions, but may have difficulty with maintaining attention and concentration for extended periods and at times may have difficulties carrying out detailed instructions; would be able to cooperate and be socially appropriate, but has reduced social activity; would be able to react and adapt appropriately to the work environment; and would be mentally capable of independently performing routine tasks on a sustained basis (Tr. 121-122, 126-128). Dr. Sillers opined that Dr. Atcher's more restrictive opinion was without substantial support from other evidence of record, rendering it less persuasive. Dr. Siller's further opined that Dr. Atcher's opinion was an overestimate of the severity of Plaintiff's restrictions and limitations (Tr. 128).

At the hearing before the ALJ, Plaintiff provided testimony as to the duties and nature of her past work (Tr. 35-41), which included prolonged standing and frequent lifting. She said the primary reason she was unable to work was due to her heart, nerves and back; and then described the nature and location of pain and other symptoms including numbness in her extremities, chest pain, anxiety and difficulty concentrating (Tr. 41-49). She testified that her pain radiates from her back to her legs and is worsened by sitting or standing for longer than five minutes and that the

7

pain does not allow her to twist at all (Tr. 43-44). She testified, as well, that her legs "give out" on her two to three times a day (Tr. 45) and that she cannot do housework, relying on her son and daughter to do household chores like vacuuming (Tr. 43). She also testified that she could only lift 5-7 pounds (Tr. 50). She complained of bad headaches due to a disk issue in her neck, which also causes numbness in her fingers and toes (Tr. 44). She stated that she has anxiety and fainting spells that cause weakness in her body due to a heart condition which also prevents her from sleeping and causes sharp pains in her chest (Tr. 46). As well, she explained that she experiences anxiousness and nervousness, is panicked, and often worries (Tr. 47). She testified that she has problems remembering things in the short term, having trouble remembering things as recent as one to two days before (Tr. 49),

A vocational expert (VE), Anthony Michael, testified at the December 2014 administrative hearing (Tr. 51-54). The VE testified that Plaintiff's past work ranged from skilled to unskilled, and ranged from light to heavy exertion (Tr. 51-52). The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work experience with limitations the same as those ultimately determined by the ALJ to be those of the Plaintiff (Tr. 52). The VE testified that such an individual could not perform Plaintiff's past work but could perform the representative light and sedentary exertion occupations of home aide and garment bagger

(light) as well as sorter and inspector (sedentary) (Tr. 52-53). The ALJ and Plaintiff's counsel then asked if the individual would be able to work if she had other limitations that were not part of the ALJ's ultimate residual functional capacity (RFC) determination. The VE said that such limitations would both allow and preclude employment, depending on the described limitation (Tr. 53-54). The VE testified that his testimony was consistent with the Dictionary of Occupational Titles except for the off-task and sit/stand limitations, where he relied on his experience as vocational rehabilitation expert (Tr. 54).

After a careful review of the record, the ALJ found that Plaintiff had both severe physical and mental impairments (Tr. 14; Finding No. 3), namely degenerative disc disease of the cervical and lumbar spine, obesity, major depressive disorder, and posttraumatic stress disorder. The ALJ found that Plaintiff's impairments, singly or in combination, did not meet or equal the severity of a listed impairment (Tr. 15; Finding No. 4). The ALJ found that Plaintiff's complaints of disabling limitations were not entirely credible (Tr. 19) and cited the absence of evidence of her seeking financial assistance for medical treatment or medical treatment on a sliding scale in light of her inability to afford medical care (Tr. 20).[2] Finally, the ALJ found that

---

[2] Plaintiff objects to this assessment of credibility, arguing that ALJ is not permitted to draw an adverse inference about a claimant's symptoms

9

Plaintiff had the RFC to perform light exertion work with additional postural, environmental and mental limitations (Tr. 17; Finding No. 5), including the representative light and sedentary exertion occupations of home aide and garment bagger (light) as well as sorter and inspector (sedentary), existing in significant numbers in the national economy (Tr. 22-23; Finding No. 10). Thus, the ALJ found that Plaintiff was not under a disability from her alleged disability onset date of June 29, 2012, through March 2, 2015, the date of the Commissioner's final decision (Tr. 23; Finding No. 11).

### III.

When reviewing a decision made by the ALJ, the Court may not "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). "The ALJ's findings are conclusive as long

---

based solely on the failure to seek or pursue regular medical treatment, without giving consideration to the claimant's explanation that he or she is unable to afford treatment in light of SSR 96-7p, 1996 WL 374186, in place at the time of the ALJ's decision. *Johnson v. Colvin*, No. 3:13CV-65-S, 2013 WL 6565644, at *10 (W.D. Ky. Dec. 13, 2013). The ALJ, in this instance, did not err because the analysis goes one step further and illuminates the absence of evidence about whether free or low-cost medical services were available to Plaintiff, which is a subtle but not unimportant aspect of analysis of whether a party has accessed health care opportunities under SSR 96-7p. *See* SSR 96-7p, 1996 WL 374186 at *8 ("The individual may be unable to afford treatment and may not have access to free or low-cost medical services.")

as they are supported by substantial evidence." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted). Substantial evidence "'means such relevant evidence as a reasonable mind might accept.'" *Foster*, 279 F.3d at 353 (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1991)).

**IV.**

The Court first rejects Plaintiff's argument that the ALJ erred because he failed to properly evaluate physician source opinions that she had disabling limitations. As the ALJ noted, the record does not contain a physical or mental residual functional capacity assessment from a treating source. (Tr. 20). As well, the ALJ properly gave "little weight" to the medical source statement concerning Plaintiff's functional limitations from consultative examining physician, Dr. Atcher, because it was inconsistent with the treatment notes contained in the record, which indicated improvement of symptoms with medication and therapy and that Plaintiff exhibited intact immediate, recent, and long-term memory. (Tr. 21, 580-613, 623, 627-664). *See Richardson v. Perales,* 402 U.S. 398, 399 (1971) ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").

In determining "the most [a claimant] can still do despite [her] impairments[,]" an ALJ is required to assess a claimant's

11

RFC based on all of the relevant medical and other evidence. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1) & (5), 404.1545(a)(3). Thus, no medical source opinion is alone conclusive on this issue. SSR 96-5p, 1996 WL 374183, at *2, 4-5. Similarly, a claimant's subjective complaints of pain or other symptoms cannot alone establish disability. 20 C.F.R. § 404.1529(a). While there is a limited burden shift to the Commissioner at step five of the sequential evaluation to identify work existing in significant numbers in the national economy that a claimant can perform, the claimant retains the burden of establishing her RFC limitations. *Jordon v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (citation omitted) ("The SSA's burden at the fifth step is to prove the availability of jobs in the national economy that the claimant is capable of performing . . . The claimant, however, retains the burden of proving her lack of RFC.") (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999)). She has failed to carry that burden in this matter.

Essentially, Plaintiff had to show that her impairments caused functional limitations so severe that she was unable to engage in any substantial gainful activity for a continuous period of at least 12 months so as to be considered disabled for the purposes of the Social Security Act. *See Barnhart v. Walton*, 535 U.S. 212, 220 (2002); 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must last twelve months. *Walton*, 535 U.S.

at 220. Here, contrary to her arguments, the substantial evidence of record does not support Plaintiff's claims of completely disabling limitations through the date of the ALJ's decision. *See* 20 C.F.R. § 404.1529(c)(4) (stating an ALJ must consider inconsistencies in the evidence); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) ("The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis.").

She insists that the ALJ should have given greater weight to her reported symptoms, which are subjective complaints about a claimant's condition and cannot be the basis for a finding of disability, in developing an RFC. *See* 20 C.F.R. § 404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled"). That is not enough, however, as the ALJ engaged with her description of her symptoms and balanced it, weighing her credibility, by relying on her medical records which included accounts of improvement in her symptoms, reports of feeling better and getting out more in February 2013, and mental and physical examinations demonstrating mild findings (Tr. 19-20; Tr. 580-613, 627-664); *Walters,* 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where

an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.").

The reasonableness of the RFC determination is further supported by the opinions of the state agency medical consultants, Drs. Luking and Sillers. In September 2013, Dr. Luking opined that Plaintiff retained the RFC for light exertion work with additional postural, manipulative and environmental limitations (Tr. 123-126). The ALJ gave Dr. Luking's assessment consideration and accorded it "great weight" because it was consistent with the overall treatment notes which showed mild objective findings and treatment (Tr. 20). Also in September 2013, Dr. Sillers opined that Plaintiff would be able to understand and remember simple instructions, but may have more difficulties with more detailed instructions; would be able to complete simple tasks work procedures and make work decisions, but may have difficulty with maintaining attention and concentration for extended periods and at times may have difficulties carrying out detailed instructions; would be able to cooperate and be socially appropriate, but had reduced social activity; would be able to react and adapt appropriately to the work environment; and would be mentally capable of independently performing routine tasks on a sustained basis (Tr. 121-122, 126-128). Further, Dr. Sillers's opined that Dr. Atcher's more restrictive opinion was without substantial support from other evidence of record, rendering it less

persuasive. Dr. Sillers opined that Dr. Atcher's opinion was an overestimate of the severity of Plaintiff's restrictions and limitations (Tr. 128).

The ALJ submitted Dr. Sillers's assessment to some scrutiny and accorded it "great weight" because it was consistent with the overall treatment notes (Tr. 21). As "[s]tate agency medical and psychological consultants . . . are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation," 20 C.F.R. § 404.1527(e)(2)(i) (effective August 24, 2012 to March 26, 2017, amended 82 FR 15132 effective March 27, 2017), the decision to give more weight to a state agency doctor over treating and examining doctors is, indeed, permissible. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009). In evaluating the objective evidence in his reasonable RFC determination, the ALJ clearly indicated that there was an absence of consistent objective clinical or laboratory findings to support disabling limitations as advanced by Plaintiff (Tr. 20). 20 C.F.R. § 404.1529(c)(4) (ALJ must consider inconsistencies, including conflicts between a claimant's statements and the medical record). Because the ALJ's RFC finding as to extent of Plaintiff's work-related limitations was supported by substantial evidence, the Court should affirm the ALJ's decision. 68 Fed. Reg. 51,153, 51,155 (Aug. 26, 2003) (comments to final rule) (recognizing a claimant bears the burden of proving

residual functional capacity); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854-55 (6th Cir. 2010) ("Even if this Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence.").

A review of the record in this matter supports the ALJ's finding that the record does not include objective findings that would support Plaintiff's subjective complaints of disabling symptoms in any event. More to the point, the ALJ properly considered and reasonably weighed the medical source opinions, and it was in any event the ALJ's responsibility to determine whether Plaintiff was disabled. Plaintiff ultimately asks the Court to simply disagree with the Commissioner's decision because she views the evidence differently and believes that the Court should do so, as well, but that does not mean that the decision is not supported by substantial evidence. *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *see also Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (even if the Court would have decided the matter differently than the ALJ, if substantial evidence supports the ALJ's decision, it must be affirmed). As such, the ALJ was not required to include additional limitations in his hypothetical question to the VE. *See, e.g., Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ . . . is required to incorporate only those

limitations accepted as credible by the finder of fact."). The VE's response to the ALJ's hypothetical question that included Plaintiff's credible limitations constitutes substantial evidence in support of the ALJ's finding that there were jobs in the national economy that Plaintiff could perform including the representative light and sedentary exertion positions identified by the VE (Tr. 22-23, Finding No. 10; Tr. 51-53).

The decision of the Commissioner will be affirmed.

Accordingly, for all of the reasons set forth above, **IT IS ORDERED**:

1) that Plaintiff's Motion for Summary Judgment (DE 7) is **DENIED;** and

2) that Defendant's Motion for Summary Judgment (DE 9) is **GRANTED.**

This the 29th day of September, 2017.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge